UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAUL J. McNALLY, as he is TRUSTEE,
MASSACHUSETTS LABORERS' HEALTH AND
WELFARE FUND and NEW ENGLAND LABORERS'
TRAINING TRUST FUND; JAMES MERLONI, JR.,
as he is TRUSTEE, MASSACHUSETTS LABORERS'
PENSION FUND and MASSACHUSETTS LEGAL
SERVICES FUND; MARTIN F. WALSH, as he is
TRUSTEE, MASSACHUSETTS LABORERS'
ANNUITY FUND,
          Plaintiffs

vs.

J. MICHAEL LANDSCAPING, INC.,
          Defendant

C.A. No. 05 11624 RWZ

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

I.    **INTRODUCTION**

This is an action brought to collect contributions due employee benefit funds under the terms of a collective bargaining agreement. Plaintiffs (hereinafter "the Funds") are employee benefit plans. Defendant J. Michael Landscaping, Inc. (hereinafter "J. Michael") is a Massachusetts corporation. The action has been brought pursuant to §§502(a)(3) and 515 of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1132(a)(3) and 1145 (hereinafter "ERISA").

The Court has exclusive jurisdiction of this action pursuant to §§502(a)(3) and (f) of ERISA, 29 U.S.C. §§1132(a)(3) and (f), without respect to the amount in controversy or the citizenship of the parties.

At this juncture, Plaintiffs are before the Court on a Motion for Preliminary Injunction. Plaintiffs seek an order compelling J. Michael to permit Plaintiffs to audit its payroll-related books and records to determine what amounts are due.

## II.   STATEMENT OF FACTS

On or about June 11, 1996, defendant J. Michael agreed in writing to be bound to the terms of the Restated Agreements and Declarations of Trust establishing Plaintiff Funds, to the terms of a collective bargaining agreement requiring contributions to Plaintiff Funds; and to any successor agreements. See Affidavit of Philip Mackay ("Mackay Aff."), par. 2. A copy of J. Michael's signed agreement ("short form agreement") is attached to the Complaint as Exhibit A. Because of the short form agreement, J. Michael has been a party to successive collective bargaining agreements, including the agreement which is effective from June, 2004 through May, 2007 ("Agreement"). Mackay Aff., par. 3. A copy of the relevant portions of this Agreement is attached to the Complaint as Exhibit B.

The Agreement, like its predecessor agreements, requires employers to make contributions to Plaintiff Funds for each hour worked by covered employees. Mackay Aff., par. 4. The Agreement specifies the amount to be contributed by an employer to each of Plaintiff Funds for each hour worked. Id. Employers are also required to file monthly Remittance Reports, on which employers calculate the payments they owe. Mackay Aff., par. 5.

Section 4.5 of the Restated Agreement and Declaration of Trust of the Health and Welfare Fund, which is incorporated by reference into Exhibits A and B to the Complaint, provides as follows:

>Production of Records
>
>Each Employer shall properly furnish to the Trustees, on demand, the names of his Employees, their Social Security numbers, the hours worked by each Employee and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund and for no other purpose.
>
>The Trustees may by their auditor or other representatives, examine the pertinent employment and payroll records and such other records necessary to establish accurately the correct payments and the correct hours upon which contributions should be based of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund and of the contracts or policies of insurance.

J. Michael performed work under the terms of its collective bargaining agreement between October, 2003 and November, 2004 but failed to pay all contributions due for work performed during that period. Mackay Aff., par. 6. The Funds have determined through remittance reports and other records that J. Michael owes $80,116.26 in fringe benefit contributions for the work performed between June, 2003 and November, 2004, plus $5,803.81 in underpayments for this period of time. Mackay Aff., par. 7. Further, J. Michael owes an as yet unliquidated amount in contributions for the period December, 2004 through the present. Mackay Aff., par. 8. J. Michael has failed to provide remittance reports for this period of time. Id. The Funds' counsel sent a demand letter to J. Michael via certified mail on June 2, 2005, seeking payment in full of the contributions and interest owed, plus all remittance reports for the period December, 2004 through the present. See Affidavit of Anne R. Sills ("Sills Aff"), par. 3. A copy of this letter is attached to the Complaint as Exhibit C. J. Michael has failed and refused to meet this demand. Id. Further, despite the request of Funds' counsel, J. Michael has failed and refused to cooperate with the Funds in setting up a date and time for an audit to be conducted

of its payroll records for the relevant time period. Sills Aff., par. 4. This audit is necessary to ascertain both the extent of J. Michael's liability to the Funds and the identities of its employees so that they may receive credit for benefits for the hours worked. Mackay Aff., par. 9.

Thus, J. Michael has failed and refused to pay the $80,116.26 it owes in fringe benefit contributions for the period June, 2003 through November, 2004, along with $5,803.81 in underpayments. Mackay Aff., par. 7. J. Michael has also failed and refused to pay the as yet unliquidated amount in contributions it owes for the period December, 2004 through the present. Mackay Aff., par. 8.

### III. ARGUMENT

Injunctive relief is specifically authorized by §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). Laborers' Fringe Benefit Funds, Detroit and Vicinity v. Northwest Concrete & Construction, Inc., 640 F.2d 1350, 1352 (6th Cir. 1981) ("Northwest Concrete"). A motion for preliminary injunction is addressed to the sound discretion of the court. LeBeau v. Spirito, 703 F.2d 639, 642 (1st Cir. 1983). The standard to be used by the district court in ruling on a motion for preliminary injunction is well established.

> In deciding whether to grant a preliminary injunction, a district court must weigh the following four factors: 1) the likelihood of the movant's success on the merits; 2) the potential for irreparable harm to the movant; 3) a balancing of the relevant equities, i.e. "the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld", Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); and 4) the effect on the public interest of a grant or denial of the injunction.

Gately v. Comm. of Mass., 2 F.3d 1221, 1224 (1st Cir. 1993), cert. denied, 114 S.Ct. 1832 (1994) ("Gately"); Caroline T. v. Hudson School Dist., 915 F.2d 752, 754-755 (1st Cir. 1990);

4

Agency Rent-A-Car, Inc. v. Connolly, 686 F.2d 1029, 1034 (1st Cir. 1982). Examination of each of these factors establishes that plaintiffs are entitled to the relief requested.

1) **Likelihood of Success**

"[T]he sine qua non of [the preliminary injunction standard] is whether the plaintiffs are likely to succeed on the merits." Gately, supra, 2 F.3d at 1225, citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993). The exhibits and affidavits on file establish that plaintiffs will prevail on the merits.

On or about June 11, 1996, defendant J. Michael agreed in writing to be bound to the terms of the Restated Agreements and Declarations of Trust establishing Plaintiff Funds, to the terms of a collective bargaining agreement requiring contributions to Plaintiff Funds; and to any successor agreements. See Mackay Aff., par. 2. Because of the short form agreement, J. Michael has been a party to successive collective bargaining agreements, including the agreement which is effective from June, 2004 through May, 2007 ("Agreement"). Mackay Aff., par. 3. The Agreement requires employers to make contributions to Plaintiff Funds for each hour worked by covered employees and to file monthly Remittance Reports, on which employers calculate the payments they owe. Mackay Aff., pars. 4, 5.

Section 4.5 of the Restated Agreement and Declaration of Trust of the Health and Welfare Fund, which is incorporated by reference into Exhibits A and B to the Complaint, provides as follows:

> Production of Records
>
> Each Employer shall properly furnish to the Trustees, on demand, the names of his Employees, their Social Security numbers, the hours worked by each Employee and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund and for no other purpose.

> The Trustees may by their auditor or other representatives, examine the pertinent employment and payroll records and such other records necessary to establish accurately the correct payments and the correct hours upon which contributions should be based of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund and of the contracts or policies of insurance.

J. Michael owes an as yet unliquidated amount in contributions for the period December, 2004 through the present. Mackay Aff., par. 8. J. Michael has failed to provide remittance reports for this period of time. Id. The Funds' counsel sent a demand letter to J. Michael via certified mail on June 2, 2005, seeking payment in full of the contributions and interest owed, plus all remittance reports for the period December, 2004 through the present. Sills Aff, par. 3. J. Michael has failed and refused to meet this demand. Id. Further, despite the request of Funds' counsel, J. Michael has failed and refused to cooperate with the Funds in setting up a date and time for an audit to be conducted of its payroll records for the relevant time period. Sills Aff., par. 4. This audit is necessary to ascertain both the extent of J. Michael's liability to the Funds and the identities of its employees so that they may receive credit for benefits for the hours worked. Mackay Aff., par. 10.

The United States Supreme Court and this Court have held that trustees of employee benefit funds have the right under ERISA to audit an employer's books and records to determine whether the employer is in compliance with its obligations. See, Central States Southeast and Southwest Areas Pension Fund, et al, Petitioners v. Central Transport, Inc., et al, 472 U.S. 559 (1985) (trustees of multi-employer employee benefit plans covered by ERISA have power under trust document to examine pertinent records of each employer).

Thus, J. Michael has refused to provide the necessary remittance reports or to permit an audit of its pertinent books and records for the period from December, 2004 through the present and, unless enjoined by this Court, there is every likelihood that it will continue to dishonor its obligations to the Funds and the employees.

2) **Irreparable Harm**

J. Michael's refusal to permit an audit renders the Funds unable to fully satisfy its fiduciary and statutory obligations to the Funds' beneficiaries and participants. "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled . . ." Central States Pension Fund, 472 U.S. at 571. Employers are required to make contributions to Plaintiff Funds for each hour worked by covered employees. Mackay Aff., par. 4. By refusing to permit an audit, J. Michael denies Plaintiffs the opportunity to ascertain the extent of this delinquency, and, by extension, to collect all contributions that J. Michael owes the Funds. See generally Central Transport, supra. It also denies J. Michael's employees the opportunity to receive credit for all work performed.

3) **Balancing of Harms**

"The heart of the matter is whether 'the harm caused plaintiff without the injunction, in light of the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants.'" Gately, supra, 2 F.3d at 1225, quoting Vargas-Figueroa v. Saldana, 826 F.2d 160, 162 (lst Cir. 1987) (emphasis in original).

No harm can come to the employer by being required to do that which the law commands it to do. The demonstrated harm to Plaintiffs far outweighs any harm to Defendant.

4)      **<u>Public Interest</u>**

Congress declared it to be the policy of ERISA to "protect . . . the interest of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to Federal courts." 29 U.S.C. §1001(b). The House Report on the Act's enforcement provisions states that they are

> designed specifically to provide both the Secretary and participants
> and beneficiaries with broad remedies for redressing or preventing
> violations of the Act. The intent of the committee is to provide the
> full range of legal and equitable remedies available in both state
> and federal courts and to remove jurisdictional and procedural
> obstacles which in the past appear to have hampered effective
> enforcement of fiduciary responsibilities . . .

H.R. Rep. No. 93-533, 93d Cong., 2d Sess. 17, reprinted in [1974] U.S. Code Cong. & Ad. News, p. 4639, 4655.

The federal courts have interpreted this legislative history as "unambiguous evidence" that Section 502's enforcement provisions are intended to "have teeth" and to be "liberally construed." <u>Northwest Concrete</u>, <u>supra</u>, at 1352. "Given the array of remedies that ERISA provides for redressing and preventing violations of the statute, it is not surprising that federal courts have frequently resorted to injunctive relief when it has been perceived as necessary to fully protect the statutory and contractual rights of Fund participants and beneficiaries." <u>Metropolitan D.C. Paving Industry Employees Health and Welfare Trust Fund v. Jones & Artis Construction Co.</u>, 2 EBC 2227, 2223 (D. D.C., 1991).

"Congress made it abundantly clear that an employer would not be permitted to circumvent or ignore its funds, payment and other obligations under ERISA." <u>A & G</u>, citing <u>Northwest Concrete</u>, <u>supra</u>, at 1352. The public interest in preserving the integrity of employee pension, health, and welfare plans would be furthered by issuance of the preliminary injunction.

8

IV.  **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully submit that their Motion for Preliminary Injunction should be granted.

Respectfully submitted,

PAUL J. MCNALLY, as he is
TRUSTEE, MASSACHUSETTS
LABORERS' HEALTH AND WELFARE
FUND, et al,

By their attorneys,

_____
Anne R. Sills, Esquire
BBO #546576
Gregory A. Geiman, Esquire
BBO #655207
Segal, Roitman & Coleman
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208

Dated: August 2, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction has been served by first class mail upon the defendant's counsel, Paul J. Hogan at Hogan & Associates, 63 Chatham Street, Boston, MA  02109 this 2 day of August, 2005.

_____
Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 6306 05-198/ memo-supmotinj.doc

9