UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| PAUL J. McNALLY, as he is TRUSTEE, MASSACHUSETTS LABORERS' HEALTH AND WELFARE FUND and NEW ENGLAND LABORERS' TRAINING TRUST FUND; JAMES MERLONI, JR., as he is TRUSTEE, MASSACHUSETTS LABORERS' PENSION FUND and MASSACHUSETTS LEGAL SERVICES FUND; MARTIN F. WALSH, as he is TRUSTEE, MASSACHUSETTS LABORERS' ANNUITY FUND, <br>                   Plaintiffs <br><br> vs. <br><br> J. MICHAEL LANDSCAPING, INC., <br>                   Defendant <br><br> and <br><br> BARLETTA ENGINEERING CORPORATION; MODERN CONTINENTAL CONSTRUCTION CO., INC.; and PEABODY CONSTRUCTION COMPANY, INC., <br>                   Reach-and-Apply Defendants | C.A. No. 05-11624 RWZ |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

**I.      INTRODUCTION**

This is an action brought to collect contributions due employee benefit funds under the terms of a collective bargaining agreement. Plaintiffs (hereinafter "the Funds") are employee benefit plans. Defendant J. Michael Landscaping, Inc. (hereinafter "J. Michael") is a Massachusetts corporation. Reach-and-Apply Defendants Barletta Engineering Corporation, Modern Continental Construction Co., Inc., and Peabody Construction Co., Inc. are all

Massachusetts corporations. Upon information and belief, J. Michael has worked as a subcontractor to each of the aforementioned Reach-and-Apply Defendants on recent projects, and the Reach-and-Apply Defendants continue to owe payments to J. Michael for work the Defendant conducted on those projects. The Funds have a legal or equitable interest in payments due J. Michael from the Reach-and-Apply Defendants, and these sums cannot be reached to be attached or taken on execution until such time as they come into the possession of J. Michael. The action has been brought pursuant to §§502(a)(3) and 515 of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1132(a)(3) and 1145 (hereinafter "ERISA").

      The Court has exclusive jurisdiction of this action pursuant to §§502(a)(3) and (f) of ERISA, 29 U.S.C. §§1132(a)(3) and (f), without respect to the amount in controversy or the citizenship of the parties.

      At this juncture, plaintiffs are before the Court on a Motion for Preliminary Injunction. Plaintiffs seek an order enjoining the Reach-and-Apply Defendants and their agents, servants, employees, attorneys, and upon those persons in active participation or concert with them and those persons acting at their command who receive actual notices of a Preliminary Injunction order by personal service or otherwise, and each and every one of them, from secreting, concealing, destroying, damaging, selling, transferring, pledging, encumbering, assigning, or in any way or manner disposing of or reducing the value of, or making any payment to defendant J. Michael on account of sums that are due or will hereafter become due J. Michael from the Reach-and-Apply Defendants.

II.   **STATEMENT OF FACTS**

On or about June 11, 1996, defendant J. Michael agreed in writing to be bound to the terms of the Restated Agreements and Declarations of Trust establishing Plaintiff Funds, to the terms of a collective bargaining agreement requiring contributions to Plaintiff Funds; and to any successor agreements.  See Verified Amended Complaint for Delinquent Contributions and to Obtain an Audit ("Complaint"), par. 13.  A copy of J. Michael's signed agreement ("short form agreement") is attached to the Complaint as Exhibit A.  Because of the short form agreement, J. Michael has been a party to successive collective bargaining agreements, including the agreement which is effective from June, 2000 through May, 2004 ("Agreement").  Complaint, par. 14.  A copy of the relevant portions of this Agreement is attached to the Complaint as Exhibit B.  The Agreement, like its predecessor agreements, requires employers to make contributions to Plaintiff Funds for each hour worked by covered employees.  The Agreement specifies the amount to be contributed by an employer to each of Plaintiff Funds for each hour worked.  Employers are also required to file monthly Remittance Reports, on which employers calculate the payments they owe.  Complaint, par. 15.

J. Michael performed work under the terms of its collective bargaining agreement between October, 2003 and November, 2004 but failed to pay all contributions due for work performed during that period.  Complaint, par. 18.  The Funds have determined through remittance reports and other records that J. Michael currently owes $75,116.26 in fringe benefit contributions for the work performed between June, 2003 and November, 2004, plus $5,803.81 in underpayments for this period of time.  Complaint, par. 19.  Further, J. Michael owes an as yet unliquidated amount in contributions for the period December, 2004 through the present.  J. Michael has failed to provide remittance reports for this period of time, and to date, has failed to

pay the full amount of the contributions and interest owed despite the Funds' demand that they do so. Complaint, pars. 20, 21.

Upon information and belief, J. Michael has worked as a subcontractor to the Reach-and-Apply Defendants on recent projects, and the Reach-and-Apply Defendants continue to owe payments to J. Michael for work the Defendant conducted on those projects. Specifically, upon information and belief, J. Michael worked for Peabody at Boston's Four Seasons hotel between July and November, 2004. Complaint, par. 39. The Funds have a legal or equitable interest in payments due J. Michael from the Reach-and-Apply Defendants for work conducted on these or any other projects. These sums cannot be reached to be attached or taken on execution until such time as they come into the possession of J. Michael pursuant to G.L. c. 214, §3(6).

### III.    ARGUMENT

Injunctive relief is specifically authorized by §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). <u>Laborers' Fringe Benefit Funds, Detroit and Vicinity v. Northwest Concrete & Construction, Inc.</u>, 640 F.2d 1350, 1352 (6th Cir. 1981) ("<u>Northwest Concrete</u>"). A motion for preliminary injunction is addressed to the sound discretion of the court. <u>LeBeau v. Spirito</u>, 703 F.2d 639, 642 (1st Cir. 1983). The standard to be used by the district court in ruling on a motion for preliminary injunction is well established.

> In deciding whether to grant a preliminary injunction, a district court must weigh the following four factors: 1) the likelihood of the movant's success on the merits; 2) the potential for irreparable harm to the movant; 3) a balancing of the relevant equities, i.e. "the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld", <u>Narragansett Indian Tribe v. Guilbert</u>, 934 F.2d 4, 5 (1st Cir. 1991); and 4) the effect on the public interest of a grant or denial of the injunction.

4

Gately v. Comm. of Mass., 2 F.3d 1221, 1224 (1st Cir. 1993), cert. denied, 114 S.Ct. 1832 (1994) ("Gately"); Caroline T. v. Hudson School Dist., 915 F.2d 752, 754-755 (1st Cir. 1990); Agency Rent-A-Car, Inc. v. Connolly, 686 F.2d 1029, 1034 (1st Cir. 1982). Examination of each of these factors establishes that plaintiffs are entitled to the relief requested.

**1)     Likelihood of Success**

"[T]he sine qua non of [the preliminary injunction standard] is whether the plaintiffs are likely to succeed on the merits." Gately, supra, 2 F.3d at 1225, citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993). The exhibits and affidavits on file establish that plaintiffs will prevail on the merits.

Massachusetts General Laws chapter 214, §3(6) is the Commonwealth's reach-and-apply statute. Under this statute, the Court must engage in a two-step process to establish (1) the indebtedness of the defendant and (2) that the defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt. Hunter v. Youthstream Media Networks, Inc., 241 F.Supp.2d 52, 57 (D.Mass. 2002). This two-step process is further explained as follows:

> The first step is in the nature of an action at law and requires the plaintiff to establish the debt owed by the principal defendant to the plaintiff. Massachusetts Electric Company v. Athol One, Inc., 391 Mass. 685 (Mass. 1984) ("in the first step," the plaintiff must show the existence of a debt owed to the plaintiff by "the principal defendant") . . . "The second step involves the process of satisfying the debt," . . . "out of the property held by one who owes a debt to the principal defendant." Massachusetts Electric Company v. Athol One, Inc., 391 Mass. at 687 . . . Under chapter 214, the plaintiff "must show that the property, by its nature, is incapable of attachment or of taking on execution in a legal action." Massachusetts Electric Company v. Athol One, Inc., 391 Mass. at 687 . . .

Trustees v. Baldwin Steel Co., Inc., 2001 WL 1555539, *3-*5 (D.Mass. 2001).

5

In the instant case, J. Michael is indebted to the Funds in that it has failed to pay fringe benefit contributions that are contractually owed the Funds.  As stated above, J. Michael is signatory to a collective bargaining agreement that requires it to make contributions to Plaintiff Funds for each hour worked by covered employees and specifies the amount to be contributed by an employer to each of Plaintiff Funds for each hour worked.  Complaint, pars. 13-15.  J. Michael performed work under the terms of its collective bargaining agreement between October, 2003 and November, 2004 but failed to pay all contributions due for work performed during that period.  Complaint, par. 18.  The Funds have determined through remittance reports and other records that J. Michael currently owes $75,116.26 in fringe benefit contributions for the work performed between June, 2003 and November, 2004, plus $5,803.81 in underpayments for this period of time.  Complaint, par. 19.  Further, J. Michael owes an as yet unliquidated amount in contributions for the period December, 2004 through the present.  Complaint, par. 20.  These amounts remain due and owing to date.

Further, the Funds wish to satisfy the defendant's debt, in part, out of payments owed J. Michael by the Reach-and-Apply Defendants.  Upon information and belief, J. Michael has worked as a subcontractor to the Reach-and-Apply Defendants on recent projects, and the Reach-and-Apply Defendants continue to owe payments to J. Michael for work the Defendant conducted on those projects.  Specifically, upon information and belief, J. Michael worked for Peabody at Boston's Four Seasons hotel between July and November, 2004.  Complaint, par. 39.  The Funds have a legal or equitable interest in payments due J. Michael from the Reach-and-Apply Defendants for work conducted on these or any other projects.  These sums cannot be reached to be attached or taken on execution until such time as they come into the possession of J. Michael pursuant to G.L. c. 214, §3(6).

**2)** **Irreparable Harm**

If the Reach-and-Apply Defendants were to secret, conceal, destroy, damage, sell, transfer, pledge, encumber, assign, or in any way or manner dispose of or reduce the value of, or make any payment to defendant J. Michael on account of sums that are due or will hereafter become due J. Michael from the Reach-and-Apply Defendants, it would render the Funds unable to fully satisfy their fiduciary and statutory obligations to the Funds' beneficiaries and participants. "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled . . ." Central States Pension Fund, 472 U.S. at 571. The Funds are entitled to contributions for all work performed by J. Michael's employees. Complaint, par. 15.

**3)** **Balancing of Harms**

"The heart of the matter is whether 'the harm caused plaintiff without the injunction, in light of the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants.'" Gately, supra, 2 F.3d at 1225, quoting Vargas-Figueroa v. Saldana, 826 F.2d 160, 162 (lst Cir. l987) (emphasis in original).

No harm can come to the Reach-and-Apply Defendants by being enjoined from disbursing payments that they already owe the Defendant for work done by the Defendant on their projects. The demonstrated harm to Plaintiffs far outweighs any harm to the Reach-and-Apply Defendants.

**4)** **Public Interest**

Congress declared it to be the policy of ERISA to "protect . . . the interest of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to Federal courts." 29 U.S.C. §1001(b). The House Report on the Act's enforcement provisions states that they are

> designed specifically to provide both the Secretary and participants
> and beneficiaries with broad remedies for redressing or preventing
> violations of the Act.  The intent of the committee is to provide the
> full range of legal and equitable remedies available in both state
> and federal courts and to remove jurisdictional and procedural
> obstacles which in the past appear to have hampered effective
> enforcement of fiduciary responsibilities . . .

H.R. Rep. No. 93-533, 93d Cong., 2d Sess. 17, reprinted in [1974] U.S. Code Cong. & Ad. News, p. 4639, 4655.

The federal courts have interpreted this legislative history as "unambiguous evidence" that Section 502's enforcement provisions are intended to "have teeth" and to be "liberally construed." Northwest Concrete, supra, at 1352. "Given the array of remedies that ERISA provides for redressing and preventing violations of the statute, it is not surprising that federal courts have frequently resorted to injunctive relief when it has been perceived as necessary to fully protect the statutory and contractual rights of Fund participants and beneficiaries." Metropolitan D.C. Paving Industry Employees Health and Welfare Trust Fund v. Jones & Artis Construction Co., 2 EBC 2227, 2223 (D. D.C., 1991).

"Congress made it abundantly clear that an employer would not be permitted to circumvent or ignore its funds, payment and other obligations under ERISA." A & G, citing Northwest Concrete, supra, at 1352.  The public interest in preserving the integrity of employee pension, health, and welfare plans would be furthered by issuance of the preliminary injunction.

IV.   **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully submit that their Motion for Preliminary Injunction should be granted.

        Respectfully submitted,

        PAUL J. MCNALLY, as he is
        TRUSTEE, MASSACHUSETTS
        LABORERS' HEALTH AND WELFARE
        FUND, et al,

        By their attorneys,

        /s/ Gregory A. Geiman
        Anne R. Sills, Esquire
        BBO #546576
        Gregory A. Geiman, Esquire
        BBO #655207
        Segal, Roitman & Coleman
        11 Beacon Street
        Suite #500
        Boston, MA  02108
        (617) 742-0208

Dated:  December 2, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction has been served by first class mail upon the defendant, J. Michael Landscaping, Inc. by its attorney Paul Hogan at Hogan & Associates, 63 Chatham Street, Boston, MA  02109 and upon the reach-and-apply defendants, Barletta Engineering Corporation at 40 Shawmut Road, Suite #200, Canton, MA  02021, Modern Continental Construction Co., Inc. at 600 Memorial Drive, Cambridge, MA  02139, and Peabody Construction Company, Inc. at 536 Granite Street, Braintree, MA  02184 this 2nd day of December, 2005.

        /s/ Gregory A. Geiman
        Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 6306 05-198/memo-supmotpj-reach&apply.doc